Bowie, C. J.,
delivered the opinion of this Court:
The application, for the mandamus in this case, was resisted and refused, upon the ground that, ccthe Act of the Genera] Assembly of Maryland, requiring the Commissioners of Allegany County to levy the balance estimated by the Board of Commissioners of Public Schools, and reported to the commissioners of the'county, as necessary for the support of the. schools of the county, is unconstitutional and void; because contrary to Art. 7, sec. 8, of the State Constitution, which ordains, “that the County Commissioners shall exercise such powers and duties only as the Legislature may from time to time prescribe, but such powers and duties, and the tenure of office shall be uniform throughout the State.”
It is said, there is no law conferring on the commissioners of the counties generally, power to make provision for public .schools, and therefore the Act for Allegany County, is special, local and unequal, contrary to- the letter and spirit of the Constitution, which designed all parts of the State, should bo subject to the same taxation, for the .same objects.
When the organic law, imposed this feature of uniformity upon the County Commissioners and other county officers, it chunot be supposed it was designed to ignore the varieties of situation and condition of the people of the several counties, and the different institutions established among them. The levy courts for which the County Commissioners were substituted, had exercised from the organization of the State Government, the power of levying taxes for every local purpose which the peculiar wants of each county might require, under the sanction of general or special Acts of Legislature.
The legislation of the State exhibits various systems of internal regulation in respect to roads, schools, paupers and criminal trials, in the several counties, all of which ultimately involve the exercise of the power of taxation. Some of these systems, since the adoption of the New Consfcitu *458 tion, have been codified as part of the Public Local Law of the State. If the position assumed by the appellees in this case be correct, the laws requiring provision for the support of the poor, repairs of county roads, or the support of paupers, which are not uniform throughout the State, and require the levying of taxes for such purposes, are “ipso fado” void, because not within the powers legitimately granted by the Constitution.
Uniformity of power does not necessarily imply identity of purpose or object. The difference between power and object is, that, the one is an attribute, faculty or means; the other, an end, or fact to be accomplished. Power, is general, object is special. As in mechanics, the motive power may be applied to an almost infinite variety of uses; so in politics, the power of taxation, which is the great motor of government, may be exercised for the promotion of every object of society, among the chief and noblest of which is, the diffusion of knowledge and education of the people.
The “power to levy all needful taxes and to pay and discharge all claims on or against the county, which have been expressly or impliedly authorized by law,” (conferred by Art 28, sec. 3, Code of Maryland,) conveys authority and imposes the duty of providing for any local object sanctioned by the Legislature.
“It is a well settled principle that, when a statute confers a power upon a corporation, to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative; and the words power and authority in such case may be construed duty and obligation.” Dwarris on Statutes, 712. Mayor & C. C. of Balto. vs. Marriott, 9 Md. Rep., 174.
In this instance, the commissioners of the county are not left to inference, as to their duty and obligation to exercise the power of taxation, but are expressly enjoined to exert it for the most salutary public purposes. The power here called into requisition, is uniform, vested in the com *459 missioners of all the counties in the State, as is indicated in the Public General Laws. Its application to various specific objects, is shown by the Public Local Laws.
If the object of the Constitution in requiring uniformity in the powers, duties and tenure of the commissioners of the county, and other local officers was, as has been suggested, to suppress a species of local legislation, which had grown up under the former Constitution, the means adopted, were very inadequate to the end.
It would violate the independence of the several departments of Government, and disturb the constitutional distribution of power among them, if the judiciary should intervene and arrest the exorcise of wholesome legislative authority upon the ground of repugnance to the Constitution, unless the usurpation of power was clear and indisputable, not merely inferential and argumentative. State use of Wash. Co. vs. The Balto. & Ohio R. R. Co., 12 G. & J., 438. 15 Md. Rep., 477.
For these reasons we think the Act of 1860, ch. 335, codified among the Public Local Laws, Art. 1, secs. 142 to 157, inclusive, is constitutional and valid.
The 155th section of that Article enacts, “that the balance necessary for the support of the schools, shall be annually estimated and determined by said Board of Commissioners of Public Schools, who shall report the same to the County Commissioners, who are hereby authorised and required to levy annually, the sum so estimated and reported upon the assessable property of Allegany County, to be collected in the same manner as other taxes now are or shall be hereafter collected.”
The prayer of the appellants’ petition, filed on the 20th of February 1862, and founded on this section, is for a writ of mandamus, directing the County Commissioners of Allegany County, at their next levy of taxes in the year 1862, to levy for the use of the petitioners the sum of ten thousand dollars, so estimated and determined by the school board, and so refused by said County Commissioners *460 and which they still refuse to levy, (being the estimate for the balance due for the support of schools for the year ensuing the 1st of July 1861,) and if such relief additional to the above is deemed proper, to order said County Commissioners to levy at their next meeting for the annual levy of taxes for the yéar then next ensuing, such sum as the petitioners may estimate and determine to be the necessary balance for the support of the public schools of the county for the year ensuing the next annual levy of taxes,” provided it does not exceed the limit fixed in said section 155, of the-Public Local Laws.
The relief prayed, is both prospective and retrospective. The appellants anticipate, because the County Commissioners have refused to assess the sum estimated and reported in the year 1861, they will refuse to assess that which might be estimated and reported in the year 1862, and pray a mandamus to compel the appellees to do an act which they had not refused to do. However natural and strong the presumption, that the ajrpellees would refuse in the then current year, to levy the sum to be estimated, as they had done in the year preceding, to levy the sum estimated and reported, this Court cannot act upon such presumptions.
A mandamus will not be granted in anticipation of a defect of duty or error in conduct. Tapping on Mandamus, 63.
The other aspect of the prayer, requires a mandamus to enforce a levy for a past year, which the law requires to be assessed within certain definite periods then passed. The estimates, it has been seen, were required by law to be annual, and the levies to be annual. Is it competent for a judicial tribunal, to direct a board of commissioners to impose a tax for special or particular purposes after the time prescribed by law ? This question occurred very early in our judiqial history, and was decided adversely to the petitioner, a decision which has been generally acquiesced in ever since.
In Ellicott vs. The Levy Court, 1 H. & J., 360, the peti *461 'cioner prayed for a mandaimts, to compel the Levy Court to assess a sum of money required by a special law to be levied at the same time with other county charges, and those charges were, by general law, directed to he laid within certain periods then elapsed.
Judge Chase said: “The Act of Assembly directs the money to be levied by a particular day — this is a special authority, and as the time has elapsed, the Court thinks it would be improper to order the mandamus, as the Levy Court would have no authority under the law, to make the levy.”
For the same general principles as to the exercise of specially delegated powers. See Kerr vs. The State, 3 H. & J., 560. The State vs. Merryman, 7 H. & J., 79.
The object of granting the writ of mandamus, being to prevent a failure of justice, and to provide an immediate and efficacious remedy, it follows, that it will not be granted, if, when granted, it would be nugatory, in accordance with the maxim' “lex non eogii inuiilia.” Tapping on Mandamus, 67. Hence, although, we differ with the learned judge below, on the constitutional question, wre are obliged to concur in refusing the mandamus for the other reasons assigned.
We have less reluctance in reaching this conclusion, as we are satisfied, the appellees acting upon constitutional scruples as to their power to assess the sums required for the public schools, will, upon having their doubts removed, be as ready to execute the law, as they were before resolute in opposing it.
[Note. The following is the opinion of the Court below, (Weisel, J.,) filed with the order dismissing the petition.)
“The plaintiffs in this case filed their petition on the 20th February 1B62, praying that the writ of mandamus might *462 be issued requiring the defendants to levy on the assessable property of Allegany County the sum often thousand dollars, to gratify the estimate made by the plaintiffs of the balance due for the support of the common schools of Allegany County for the year ensuing- the 1st day of July 1861, and also the estimate that might be made for the same purpose for the year ensuing the first day of July next, claiming this right and duty under the 155th section of Article 1 of the Public Local Laws of Maryland.
“The answer to the petition denies this right and claim, and resists the application for the writ, on the ground that the law under which it is claimed, so far as it purports to impose this duty on the County Commissioners, is unconstitutional and void, and not obligatory upon them.
“The argument on the motion to show cause why the writ should not issue, has been confined to this constitutional question, and without adverting to the other questions which might arise on this application, I will at once direct my attention to the consideration of the constitutionality of the law, in the particular referred to, the importance of which is readily perceived and acknowledged.
“The Constitution of the State, Art. 7, sec. 8, provides, that the County Commissioners ‘shall exercise such powers and duties only, as the Legislaturemay from time to timeprescribe,’ ‘but such powers and duties, and the tenure of office, shall be uniform throughout the State, and the Legislature shall, at or before its second regular session, after the adoption of this Constitution, pass such laAvs as may be necessary for determining the number for each county and ascertaining and defining the powers, duties and tenure of office of said commissioners; and until the passage of such laws the commissioners elected under the Constitution shall have and exercise all the powers and duties in their respective counties, now exercised by the county authorities under the laAvs of the State.’
“The same constitutional provision is found in the next succeeding section (sec. 9) relative to the powers and du *463 ties of Road Supervisors, and once more, in sec. 40, Art. 3, where the Legislature is required to adopt some simple and vmform system of charges in the offices of the clerks of Courts and Registers of Wills in the counties of the State and City of Baltimore, and for collecting the same.
“In 1853 the Legislature passed several laws, fixing the number of commissioners for each county, (chapter 312,) granting them power to open, alter and close public roads, (chapter 220,) and defining other powers and duties, (chapter 239.) This last law after granting certain powers, &c., provides by sec. 3, that the commissioners of the several counties shall have all other powers and perform all other duties hereafter granted or prescribed by law, provided such powers and duties shall he uniform throughout the State, and not contrary to the Constitution. Those and other laws are codified in the Code of the Public General Laws of the State, Art. 28. The 4th sec. of this Article provides, that the meeting to make the annual1 levy of taxes shall he held previous to the first day of July in each year. The 5th section and those following it, contain and define the powers and duties of the commissioners of the several counties, and among these are none for the establishment or support of public or common schools in the several counties of the State. But the law referred to contains these provisions also, viz: that the commissioners shall levy all needful taxes on the assessable property within the county liable to taxation, and provide for collecting the same; and that they ‘shall pay and discharge all claims on or against the county which have been expressly or impliedly authorized by law,’ sec. 5th, 1st and last clause.
“By the law of 1860, cli. 335, codified among the Public Local Laws of the State, (Art. 1, sec. 142 to 151 inclusive,) the Legislature incorporated the Board of Commissioners of Public Schools of Allegany County, with certain powers and duties, and this law in sec. 155, after assigning to said corporation the school fund of the county, and other funds which may bo by any law of the State applied to *464 the purpose of education in said county, provides that the balance necessary for the support of the schools, shall be annually estimated aud determined by the Board of Commissioners of Public Schools, who shall report, the same to the County Commissioners who ‘are authorized and required to levy annually the sum so estimated, <Md reported upon the assessable property of Allegany County, to be collected in the same manner as other taxes now are or shall hereafter be collected, the said school tax when collected, shall be paid over to the treasurer aforesaid quarterly; provided the said levy for school purposes shall not exceed fifteen'cents in the one hundred dollars.’
“This duty thus imposed by'the law upon the Commissioners of Allegany County, is asserted to be unconstitutional and void and not obligatory upon said commissioners, because no snob duty is imposed for such a purpose upon the commissioners of the several counties of the State, and therefore it is not uniform; that the tax thus required to be levied, is therefore not a needful one, and that the estimate made and reported by the school commissioners, and for which a levy by them was or is demanded, does not constitute suoli a claim against the county which it is required to recognize, pay and discharge. In this view I concur. The County Commissioners are to exercise such powers and duties only, as the Legislature may from time to time prescribe-, but it is expressly provided that these powers and duties, and tbe tenure of office, shall be uniform, throughout the Slate. This is the standard by which this new duty imposed upon tbe Commissioners of Allegany County, of levying a tax to meet the estimated balance required by the school board, is to be judged or measured.
“The object of tlie law of 1860, cb. 335, is to establish and support a system of public schools in Allegany County. It is praiseworthy and it is competent for tbe Legislature to legislate on such a subject. Public local laws for the respective counties are within the constitutional action of the Legislature, and so far as this law creates a body poli *465 tic for the purpose, and does not confer any powers on the County Commissioners of Allegany County, or impose on them any duty, gio question can well arise as to its constituí,ionalitjr. It is only liable to the objection in so far as it requires the County Commissioners of said county to levy for any portion of the funds necessary to support the schools.
“The tenure of the office of commissioners throughout the State must be uniform. If a law were passed making the tenure of the office different in one county from that in another, or all the others, such law would not be uniform, and it would be therefore void under the Constitution. So when a power is conferred or a duty enjoined on the commissioners of one county, which is not so conferred or enjoined on the commissioners of the other counties, the same objection could he taken and would prevail. What arc powers and duties, and can they ho separated from or are they not determined by the objects to which they relate?
“Is not the object the very thing to be accomplished by the power or the duty ? A power without an object is futile and powerless. It is for the purpose of effecting an object that a power is granted or a duty enjoined, and a difference in objects is a difference of powers. The power to build a bridge is not a power to do any thing else, except as it may he necessary to the building of the bridge. The word duty embraces the power to perform the duty. But the word power may not import a duty, as when the power is only discretionary. Power and duty are usually correlative terms. 15 Md. Rep., 474, 488. But whether the power or duty he absolute or discretionary, in no case can it he separated from its object. It is the object then that determines the nature of the power or duty.
“In examining therefore the authority of the Legislature to impose the specific duty upon the Commissioners of Allegany County, the object to ho attained is to be regarded and the inquiry is started, whether the Legislature has by law authorized the commissioners of the several counties of the State to levy taxes lor the support in whole or in *466 part of public schools in all the counties of tlig State. Among the objects or powers in the Article of the Code of Public General Laws, none such appears, either express or implied, and no law has been passed since, whicli has been brought to the view or knowledge of the Court, which grants the power to the commissioners of the several counties of this State. The law therefore of 1860, ch. 335, codified as aforesaid, so far as it imposes this duty upon the commissioners of Allegany County, is unauthorized by the Constitution and void. It imposes a duty on the commissioners of one county, not imposed on the commissioners of all the other counties of the State. It is a duty not uniform throughout the State.
“It is no answer to say that the law of 1860 incorporates a body to do certain things of a public and useful nature, separate and apart from the commissioners of the county, and therefore the tax to be levied for it by the County Commissioners is a duty within the general taxing power conferred upon them. If the Legislature passed a law empowering the Commissioners of Allegany County to erect a college in said county and to levy a tax upon its people for its erection or support, such a law would be manifestly unconstitutional. So if the Legislature should incorporate a company of citizens to erect a college in said county, and should also enact that the Commissioners of Allegany County should levy a tax upon the property of the county to be paid over to the corporation for the college, this provision to tax would be equally unconstitutional. The one would bo a direct the other a seemingly indirect mode of accomplishing the same object, though the power and duty of levying and applying the tax would in fact be the same in both cases. The unconstitutionality of both laws depends upon the fact that the power and duty would be conferred upon the commissioners of one county in the State, and not upon all. It could not therefore be pronounced a uniform power.
“If the Legislature authorized the commissioners of the *467 several counties of tbe State to levy taxes for the support of public; schools in said counties, such a law would be uniform throughout the State. But that is not the character of the law of 1860. It imposes this duty alone upon the Commissioners of Allegany County.
“The case of the Commissioners of Washington County vs. Nesbitt, 6 Md. Rep., 468, relied upon by the defendants, in the argument, has a hearing on this question. Among tho powers of tho County Commissioners in the Act of 1853, ch. 239, is this, that ‘they shall have charge of and control over the property owned hy the county, and over county roads and bridges.’
“The Court of Appeals determined that this law repealed the law of 1847, ch. 327, which had placed the court house of Washington County under the charge and keep-o£ the clerk of Washington County Court, not simply by tho general language or terms of the law itself, hut because the Constitution of the State, in said 8th sec. of Art. 7, provides, that the powers and duties of the County Commissioners should be uniform throughout the State. If the Legislature were now to pass a law placing the court house in Allegany County in tho charge and keeping of the clerk of tho Circuit Court of said county, such a law would be void, not becar.se of tbo general power already conferred upon the County Commissioners over the public property, for a partial law could change tho general law, but because this power so vested in tho commissioners must he uniform throughout the State. Therefore any law disturbing it or changing its uniformity, would be in conflict with the Constitution. So a law partial in its nature, as applicable only to one or more counties and not to all, but involving a power or duty by the commissioners of such county or counties, would be unconstitutional and void, because of its want of uniformity throughout the State.
“The policy that dictated this provision of the Constitution in relation to the powers and duties of the County Commissioners, requiring uniformity throughout the State, *468 "had. in view the suppression of a species of local legislation that had grown up under the former Constitution, unequal not only in the machinery by which the laws were put in operation, but in their burdens upon different sections or. subdivisions of the State. The taxing power is the one particularly guarded by it, for no public purpose can be accomplished without a corresponding public expenditure, and the powers and duties of the commissioners, more or less, resolve themselves into the taxing power. .
(Decided Jan. 8th, 1864.)
“Viewing the law under which this demand was made upon the Commissioners of Allegany County, so far as it imposes the duty upon them to levy for the sum estimated hy the school board, as unconstitutional, and therefore not obligatory npon the County Commissioners, and without adverting to any other aspect in which this application for a mandamus upon them has been preferred, I refuse to grant the-writ and will dismiss the petition.”

Order affirmed.